[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] OPINION
Jerry L. Louderback appeals from the Final Judgment and Decree of Divorce entered in the parties' divorce case as it pertains to custody of the parties' daughter (DOB 1-26-96), attorney fees, and spousal support. Mr. Louderback advances three assignments of error.
 1. THE TRIAL COURT ABUSED ITS DISCRETION PURSUANT TO FINDINGS OF FACT, AND THROUGH FAILING TO AWARD DEFENDANT-APPELLANT CUSTODY OF HIS MINOR CHILD, BROOKE LOUDERBACK.
This case was heard in the first instance by the trial court. The trial court awarded custody to Mrs. Louderback. The trial court made detailed findings of fact as to the relevant statutory factors that inform the trial court's exercise of its discretion in child custody matters:
 In determining the best interest of a child for purposes of allocating or modifying parental rights and responsibilities for the care of children, the court is required by R.C. 3109.04(F)(1) to consider all relevant factors, including, but not limited to:
 (a) The wishes of the child's parents regarding his care;
 The court notes that each party requests custody of the minor child.
* * *
 (c) The child's interaction and interrelationship with his parents, siblings, and any other persons who may significantly affect the child's best interest;
 It is apparent that both parents love their child, and are loved in return. The child is very close to her older step-sister, the mother's child by a prior relationship. Both of the parties have parents who provide a support system for them and assist them in care of the child. Both parties have moved beyond this relationship to new regular companions, and those individuals appear to have a positive relationship with the child.
* * *
 (e) The mental and physical health of all persons involved in the situation;
 The court is of the opinion that father shows a degree of immaturity, anger and hostility toward plaintiff, and unrealistic expectations concerning parenting issues. In addition the father has demonstrated an alcohol abuse problem. In addition, the father has a history of run-ins with the law, including several alcohol-related arrests and a domestic violence conviction. Of the two parents, it is the mother who shows stronger emotional health, and sounder abilities to plan for the child's welfare. These strengths better equip her to handle custodial responsibilities.
 (f) The parent more likely to honor and facilitate visitation and companionship rights approved by the court;
 The mother expressed to the court a willingness to cooperate in visitation matters. The court finds that the mother would be more willing to be cooperative in visitation matters if she were the custodial parent, and has proven that willingness since the parties' separation in August, 1997.
 (g) Whether either parent has failed to make all child support payments, including all arrearages, that are required of that parent pursuant to a child support order under which that parent is an obligor;
 Defendant wholly failed to pay any child support or spousal support pursuant to this court's temporary support orders until plaintiff brought a contempt action against him and a withholding order was issued by the court against defendant's wages. Only after being forced to do so against his will did defendant contribute toward the support of plaintiff or the minor child.
 (h) Whether either parent [has committed domestic violence or acted in a manner resulting in a child being an abused child or a neglected child];
 The court finds that defendant was convicted of domestic violence in Vandalia Municipal Court in October, 1997, and received a six month suspended sentence. The court finds that the incident which gave rise to this criminal charge occurred on August 19, 1997, when defendant hit plaintiff in the jaw with a closed fist, which he describes as "pushing" the defendant. Defendant then told plaintiff he would kill her, and told the plaintiff he would hurt her and the children (the parties' daughter, and the plaintiff's daughter). Defendant also told plaintiff that if her mother came to the home he would hurt her. Defendant refused to visit the hospital when the child was having surgery because, he told plaintiff, if he saw the child in pain he would "have to hurt the doctor."
* * *
 Additionally, the court finds that the mother has been the primary care giver for the child since the child was born. The mother provided exclusively for the child's health and welfare while the parties lived together until August of 1997. Defendant's child care skills appear to have developed only since he began a visitation schedule after the parties' separation in August, 1997.
 Considering the statutory factors and the facts described above, the current age of the child, the evidence submitted on each party's parenting skills, the relative strengths and weaknesses of each of the parents, defendant's history of alcohol abuse, defendant's domestic violence against plaintiff, defendant's failure to support the plaintiff or the child until forced to do so by court order, and each party's family support structure, the court finds that the mother is better equipped at this time to serve in the role as custodial parent.
Mr. Louderback takes issue with the trial court's findings as to three of the six relevant statutory factors and as to the "additional finding."
We will discuss Mr. Louderback's contentions in the order in which he presents them.
 R.C. 3109.04(F)(1)(c)
Mr. Louderback contends that the evidence does not establish that Mrs. Louderback's "new regular companion," Charles Granson, has a "positive relationship with the parties' child." We agree. Actually, the testimony is silent as to Granson's relationship, if any, with the child. Although Rebecca Pennington — Mr. Louderback's companion — testified she saw a man (who might have been Pennington) smoking at Mrs. Louderback's residence, Mrs. Louderback denied that he smoked around her children. (The testimony established that the child has ear problems and should not be exposed to cigarette smoke.) Mr. Louderback also accurately contends that the testimony demonstrated that his parents, with whom he lives, could personally care for the child while he works whereas Mrs. Louderback must resort to day care.
Although the trial court overstated the case as to Granson, other than the disputed testimony that a man — possibly Granson — was smoking in Mrs. Louderback's home, there is no evidence that Granson presents a threat to the child. We have no reason to believe that the trial court did not give appropriate consideration to the Louderbacks' testimony that they could care for the child without using day care.
 R.C. 3109.04(F)(1)(e)
Mr. Louderback contends the court failed to consider Mrs. Louderback's mother's testimony that Mrs. Louderback has experienced trouble with her nerves. He also contends that there is no evidentiary basis for the finding of "several alcohol — related arrests." He further complains that the trial court exaggerated his drinking, but ignores Mrs. Louderback's drinking. He also contends that the domestic violence of which he was convicted was atypical and provoked. Finally, he attaches significance to his completion of the first phase of an anger management course.
It is reasonably inferable from Mrs. Louderback's mother's testimony that her daughter's problems with her nerves were related to her domestic problems. Although "several alcohol — related arrests" exaggerates the testimony, there was testimony that Mr. Louderback smelled of alcohol when arrested for domestic violence, and he admitted to a misdemeanor conviction for an incident that followed drinking. As to the parties' respective drinking habits, the evidence was in conflict, and the court was free to credit the testimony of Mrs. Louderback and her mother that Mr. Louderback's frequent drinking bouts had been a persistent problem throughout the marriage. Likewise, the evidence about the incident of domestic violence was in conflict, and the court was free to credit Mrs. Louderback's version of events. Finally, we are well satisfied that the trial court considered Mr. Louderback's completion of the first phase of an anger management course, which was ordered by the Vandalia Municipal Court after the domestic violence conviction, because the trial court questioned Mr. Louderback in considerable detail about it.
 R.C. 3109.04(F)(1)(h)
Mr. Louderback appears to complain that the trial court impermissibly overemphasized the domestic violence conviction by considering it in connection with two of the statutory factors. He also contends that his failure to attend the child's two surgeries for her ear problems did not result in the child being neglected.
We find no abuse of discretion in the trial court's considering the domestic violence conviction as a factor in assessing the parties' mental health. The evidence was in conflict as to why Mr. Louderback was not in attendance when his daughter had two, apparently brief, out-patient surgeries for her ear problems. In any event, we agree with Mr. Louderback that his absences, whatever the reason, did not cause the child to be "a neglected child." See R.C. 2151.03(A).
 "Additional Finding"
Mr. Louderback contends that the penultimate paragraph of the above quoted passage is "simply incorrect" because he provided financial support while the parties lived together, and cared for the child while Mrs. Louderback was working, and even when Mrs. Louderback was present.
We agree that the evidence does support Mr. Louderback's contention that he provided financial support while the parties lived together. However, the paragraph is otherwise amply supported by the record. There was testimony that the court was entitled to believe that while the parties lived together, Mr. Louderback never took the child to the doctor, never got up with the child at night although both parties worked a day shift, never bathed the child, never changed a soiled diaper, and attempted to avoid having to watch the child or feed her.
Decisions as to child custody are commended to the sound discretion of the trial court. Although we agree that the trial court's findings are, as noted, deficient in some respects, they nevertheless are, for the most part, supported by competent, credible evidence. In our judgment, such deficiencies as do exist are not a basis for setting aside the decision of the trial court to award custody to Mrs. Louderback.
The first assignment of error is overruled.
 2. THE TRIAL COURT ABUSED ITS DISCRETION IN ASSESSING ATTORNEY FEES TO DEFENDANT-APPELLANT.
The trial court awarded Mrs. Louderback $1,000 for attorney fees. The evidence established that her fees were well in excess of that amount. Mr. Louderback's only complaint is that Mrs. Louderback can afford to pay her own attorney fees. The evidence demonstrates that Mr. Louderback's income is approximately $26,500/year, and Mrs. Louderback's income is approximately $21,700/year. We do not find this award unreasonable.
The second assignment of error is overruled.
 3. THE TRIAL COURT ERRED IN ORDERING APPELLANT TO PAY SPOUSAL SUPPORT TO VELVET LOUDERBACK.
The trial court also awarded Mrs. Louderback spousal support of $200/month for one year. Mr. Louderback claims this award is unreasonable given the parties' respective incomes, the fact that he is required to pay child support out of his earnings, and the short duration — three years — of the marriage. We do not find this modest award of spousal support unreasonable.
The third assignment of error is overruled.
The judgment will be affirmed.
GRADY, P.J. and FAIN, J., concur.
Copies mailed to:
Kenneth J. Krochmal
Alan D. Gabel
Hon. V. Michael Brigner